# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHOON RHEY, | Case No. 1:17-cv-00718-AWI-SAB (PC) |
| Plaintiff, | ORDER DISMISSING PLAINTIFF'S COMPLAINT, WITH LEAVE TO AMEND, FOR THE FAILURE TO STATE A COGNIZABLE CLAIM |
| v. | |
| INFEOMA OGBUEHI, et al., | (ECF No. 1) |
| Defendants. | ORDER DENYING MOTION TO APPOINT COUNSEL, WITHOUT PREJUDICE |
| | (ECF No. 3) |
| | ORDER DENYING MOTIONS TO REQUIRE SERVICE OF SUMMONS AND COMPLAINT |
| | (ECF Nos. 12, 13) |
| | **THIRTY-DAY DEADLINE** |

**I.**

**INTRODUCTION**

Plaintiff Choon Rhey is a state prisoner proceeding pro se in this civil rights matter pursuant to 42 U.S.C. § 1983. Following the issuance of an order denying Plaintiff's motion to proceed in forma pauperis in this case, (ECF No. 10), on August 10, 2017, Plaintiff submitted the filing fee to proceed in this action. This matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302.

Currently before the Court is Plaintiff's complaint, filed on May 24, 2017. (ECF No. 1.)

1

## II.
## SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that "fail[] to state a claim on which relief may be granted," or that "seek[] monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights. Iqbal, 556 U.S. at 676-677; Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1020-1021 (9th Cir. 2010).

Prisoners proceeding pro se in civil rights actions are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor. Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir. 2012) (citations omitted). To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The "sheer possibility that a defendant has acted unlawfully" is not sufficient, and "facts that are 'merely consistent with' a defendant's liability" fall short of satisfying the plausibility standard. Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.

## III.
## COMPLAINT ALLEGATIONS

Plaintiff is a state inmate in the custody of the California Department of Corrections and Rehabilitation ("CDCR") who is currently being housed at California Men's Colony, West in

San Luis Obispo, California. The events at issue here occurred when Plaintiff was incarcerated at Pleasant Valley State Prison ("PVSP"), in Coalinga, California. Plaintiff names the following individuals as defendants: Infeoma Ogbuehi, a nurse practitioner at PVSP; Felix Igbinosa, the Chief Medical Executive at PVSP; Adrian Pineda, Captain of B Facility at PVSP; David Lovell, CCI of B Facility at PVSP; Daren Freeland, CCI of B Facility at PVSP; and Geraldo Chavez, CCI of B Facility at PVSP.

Plaintiff alleges as follows:

1. Plaintiff, fifty-nine years old, hurt his left knee, has suffered pains and been snoring due to sleep apnea since 1998.

2. On September 22, 2005, Plaintiff was elected to approve S for single cell housing and affix's an "S" suffix, as this second cell fight at California Men's Colony State Prison.

3. On March 29, 2007, plaintiff was performed third surgery on his left knee. It was open surgery to remove one third of knee cap and he has been a member of Disability Placement Program (DPP) as a DNM since.

4. In or around October, 2008, Dr. Goodman performed nasal septoplasty to cure plaintiff's snoring and breathing difficulty at RJ Donovan State Prison, but did not work.

5. On February 5, 2009, plaintiff was diagnosed obstructive sleep apnea affected dyslipidemia despite nasal septoplasty.

6. On May 5, 2009, plaintiff's single cell status was removed without reason at RJ Donovan State Prison.

7. In or around September 2009, plaintiff was provided Continuous Positive Airway Pressure machine when he was transferred to Pleasant Valley State Prison.

8. During the double cell period, from September 2009 to March 2011, despite using CPAP machine, at least 20 inmates has come and gone as plaintiff's cellmates. Three among them have attacked him maliciously for unnecessary and wanton infliction of pain when they were not allowed to move out.

9. In January, 2011, Doctor ordered another sleep study.

///

10. On March 18, 2011, Doctor recommended custody plaintiff to be single celled after reviewing sleep study.

11. With Doctor's recommendation, Unit Classification Committee (UCC) on April 13, 2011, recommended that plaintiff to be designated single cell only due to the continuous in cell behavior and medical condition (CPAP) and loud snoring.

12. On March 21, 2013, defendant Ogbuehi posed as a physician to sign to forge CDC 1845 to remove plaintiff from DPP in its entirety.

13. On March 26, 2013, defendant Igbinosa, knowing that Ogbuehi was not a physician and should not have signed CDC1845, signed to forge same CDC 1845.

14. On April 19, 2013, defendants Pineda, Lovell, Freeland and Chavez, after reviewing CDC 1845 dated March 26, 2013, signed to forge and updated 812, 812C, 127 and 840 to remove single cell status from plaintiff.

List of attacks by Plaintiff's cellmates dated on:

15. 4/5/01 CDC 128B is indicating that plaintiff had blood on the back right side of his head. Plaintiff was the victim. CDC 115 was dismissed. When plaintiff was using the toilet at night, inmate Hernandez attacked from behind and push to the metal door to bang his head. There was no reason. Plaintiff was ended up with 10 stitches sutured on his head.

16. 10/1/04, RVR is indicating that the blood was on inmate Armitage's hand and plaintiff got blood on his body. Armitage took his TV cable in front of his eye. He claimed that cable was his, Armitage swung at him. He had black eye on his left.

17. 8/6/05, RVR is indicating that plaintiff was woken up by loud TV sound, he asked what is going on. Inmate Robles looked very angry. Plaintiff turned around to wash his face. That was then Robles attacked him to stab. He blacked out briefly. When he got his senses back, he had to react to survive. He was ended up with six puncture wounds and Robles was ended up to be referred to District Attorney.

18. 7/22/09, CDC 128B is indicating that inmate McCormic attacked when plaintiff was sitting on the bunk covering his face with his harms. Plaintiff was transferred to outside hospital to suture 10 stitches on his left eye area.

19. 12/25/10, RVR indicating that inmate Ho got very angry to attack plaintiff without reason. He stood up to try defending himself.

20. 2/17/11, RVR indicating that inmate Dumlao got very angry to attack plaintiff while he was lying on the bunk. Dumlao threw 13' TV, swung jWin Caset player at him and threw a fist at him. He was ended up not guilty. There was no reason at all.

21. 4/29/13, CDC 128G is indicating that "violent history noted (VIO) [by CSR]."

22. According to the facts, contained in paragraphs 15 through 21, inclusive, incorporated as reference hereby, plaintiff's safety is at risk of harm, well known and pervasive.

23. In April, 2013, plaintiff filed Health Care Appeal to restore single cell status.

24. Plaintiff was transferred to San Quentin State Prison (SQSP) on 7/3/13.

25. On 3/14/14, Captain Evans denied the single cell request disregarding plaintiff's Primary Care Provider (PCP)'s recommendation.

26. On May 23, 2014, Captain Evans denied the single cell request at UCC.

27. On June 6, 2014, Captain Evans denied the single cell request disregarding PCP's second recommendation.

28. Third level response of Health Care Appeal (Medical Order) by J. Lewis dated 11/25/14, Tracking/Log No.: SQ HC 14039040 indicates;
   a. There is safety issue;
   b. As of November 7, 2014, your housing was changed, you are single celled now;
   c. Your medical condition will be monitored with care provided as medically determined by PCP.

29. On May 27, 2015, captain Evans denied the single cell request at UCC.

30. On October 3, and November 11, 2015, plaintiff was forced being double celled.

31. On August 10, 2016, RVR for refusing cellmate was issued.

32. On November 16, 2016, plaintiff was forced being doubled celled.

///
///
///

5

33. On November 24, 2016, plaintiff was forced with inmate Peter Her who attacked plaintiff on December 6, 2016. Plaintiff was ended up with two puncture wound with significant amount of bleeding to soak state provide towel and dripping and bruised lips with few cuts inside.

34. On December 10, 2016 RVR for fighting for the event on December 6, 2016 was issued and plaintiff was put on C over C Status with 10 day C.T.Q. and 180 day C status.

35. On March 22, 2017, RVR for refusing cellmate was issued.

Plaintiff asserts a claim for violation of the Americans with Disabilities Act against Defendants Ogbuehi and Igbinosa. Plaintiff also asserts a claim for the violation of the Eighth Amendment for disregarding Plaintiff's safety and serious medical need, and a claim for a violation of the Fourteenth Amendment for failing to protect him from a well-known danger, against Defendants Ogbuehi, Igbinosa, Pineda, Lovell, Freeland, and Chavez.

Plaintiff seeks declaratory judgment, injunctive relief to expunge CDC 1845 dated March 26, 2013 and UCC decision dated 4/10/13, and restore his single-cell status, and compensatory and punitive damages.

## IV.

## DISCUSSION

**A. Venue**

Plaintiff's complaint alleges that he was transferred to San Quentin State Prison ("San Quentin") on July 3, 2013, and then describes events occurring in the following years involving inmates and prison officials at that institution. Plaintiff has not named any of those people as defendants.

To the extent Plaintiff seeks to bring any claims in this action concerning events at San Quentin, he may not do so in this action. The federal venue statute requires that a civil action, other than one based on diversity jurisdiction, be brought only in "(1) a judicial district where any defendant resides, if all defendants reside in the same state, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated, or (3) a judicial district in which any

defendant may be found, if there is no district in which the action may otherwise be brought." 28 U.S.C. § 1391(b).

San Quentin is located in the Northern District of California. Thus, venue for claims that arise out of events that occurred at San Quentin is not proper in this district, but instead properly lies in that district. See 28 U.S.C. § 1391(b); 28 U.S.C. § 82.

**B.   American's with Disabilities Act**

Plaintiff asserts a claim against Defendants Ogbuehi and Igbinosa for violating the American's with Disabilities Act ("ADA"), based on his allegations that they signed a CDC 1845 to remove him from the Disability Placement Program, which resulted in his loss of single cell status.

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subject to discrimination by such entity." 42 U.S.C. § 12132. Title II applies to the services, programs, and activities provided for inmates by jails and prisons. Pennsylvania Dep't of Corr. v. Yeskey, 524 U.S. 206, 208-13; Simmons v. Navajo Cnty., 609 F.3d 1011, 1021-22 (9th Cir. 2010). "To establish a violation of Title II of the ADA, a plaintiff must show that (1) [he] is a qualified individual with a disability; (2) [he] was excluded from participation in or otherwise discriminated against with regard to a public entity's services, programs, or activities; and (3) such exclusion or discrimination was by reason of [his] disability." Lovell v. Chandler, 303 F.3d 1039, 1052 (9th Cir. 2002); accord Simmons, 609 F.3d at 1021; McGary v. City of Portland, 386 F.3d 1259, 1265 (9th Cir. 2004).

Liberally construed, Plaintiff alleges that his sleep apnea/loud snoring condition requires single cell placement. At the pleading stage, the Court assumes without deciding that Plaintiff's condition would make him a qualified individual under Title II of the ADA. The Court also liberally construes Plaintiff's allegations that he required single cell status as an accommodation for his medical condition.

However, Plaintiff has not pleaded facts showing that he was denied a disability accommodation for single cell status by reason of his disability. To state a claim, Plaintiff must

7

allege facts to show that CDCR's policies unduly burden him due to his disability. McGary, 386 F.3d at 1265. This requires the public entity to make reasonable modifications in policy practice and procedures when necessary to avoid discrimination, unless the public entity can demonstrate that making the modifications would alter the nature of the service program or activity. 28 C.F.R. § 35.130(b)(7).

Plaintiff's has not identified any CDCR policy, and thus his allegations are not sufficient for the Court to conclude that Plaintiff was unduly burdened by CDCR's policies due to his disability. Therefore, Plaintiff fails to state a cognizable claim for violation of the ADA.

Further, Plaintiff cannot bring an ADA claim against individual prison employees in their personal capacities, as such claims are precluded under the ADA. Vinson v. Thomas, 288 F.3d 1145, 1156 (9th Cir. 2002); Becker v. Oregon, 170 F.Supp.2d 1061, 1066 (D. Or. 2001); Abbott v. Rosenthal, 2 F.Supp.3d 1139, 1144 (D. Idaho 2014). While the ADA does provide for suits against a defendant in their official capacity, such suits are treated as a suit against the State and therefore, "the entity's policy or custom must have played a part in the violation of federal law." Hafer v. Melo, 502 U.S. 21, 25 (1991). Accordingly, Plaintiff fails to state a cognizable claim for violation of the ADA.

### C. Eighth Amendment

Plaintiff alleges a violation of his Eighth Amendment rights based on a deliberate indifference to his safety and serious medical need, and for failing to protect him from a well-known danger.[1]

"The Eighth Amendment's prohibition against cruel and unusual punishment protects prisoners not only from inhumane methods of punishment but also from inhumane conditions of confinement." Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006) (citing Farmer v. Brennan, 511 U.S. 825, 847 (1994), Rhodes v. Chapman, 452 U.S. 337, 347 (1981)). Prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing,

---

[1] Although Plaintiff asserts a claim under the Fourteenth Amendment for the failure to protect him from a well-known danger, because he is a convicted inmate. See Bell v. Wolfish, 441 U.S. 520, 535 n. 16 (1979).

8

sanitation, medical care, and personal safety, Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000), but not every injury that a prisoner sustains while in prison represents a constitutional violation, Morgan, 465 F.3d at 1045.

To maintain an Eight Amendment claim, a prisoner must show that prison officials were deliberately indifferent to a substantial risk of harm to his health or safety. Farmer, 511 U.S. at 847; Thomas v. Ponder, 611 F.3d 1144, 1150-51 (9th Cir. 2010); Foster v. Runnels, 554 F.3d 807, 812-14 (9th Cir. 2009); Morgan, 465 F.3d at 1045; Johnson, 217 F.3d at 731; Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998). The deliberate indifference standard involves an objective and a subjective prong. First, the alleged deprivation must be, in objective terms, "sufficiently serious." Farmer, 511 U.S. at 834 (citing Wilson v. Seiter, 501 U.S. 294, 298 (1991)). Second, the prison official must "know[ ] of and disregard[ ] an excessive risk to inmate health or safety." Farmer, 511 U.S. at 837.

Thus, a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of harm and disregards that risk by failing to take reasonable measures to abate it. Id. at 837–45; see also Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004). Civil recklessness—the failure "to act in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known"—is insufficient to establish an Eighth Amendment violation. Farmer, 511 U.S. at 836-37 & n.5 (1994) (citations omitted).

Furthermore, a difference of opinion between an inmate and prison medical personnel— or between medical professionals—regarding appropriate medical diagnosis and treatment is not enough to establish a deliberate indifference claim. Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989); Toguchi, 391 F.3d at 1058. Additionally, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle v. Gamble, 429 U.S. 97, 106 (1976).

///

1   Here, Plaintiff has pleaded that he was attacked by several of his cell mates, but he has
2   not pleaded the reason why he was at risk of such attacks. Although he has implied that it may
3   have been due to his loud snoring, he has not pleaded facts plausibly suggesting a connection
4   between his medical condition and a risk of harm.

5   Furthermore, Plaintiff has not pleaded facts showing that any of the defendants were
6   actually aware of any risk of harm to Plaintiff. Although Plaintiff discusses a history of cell-mate
7   attacks and a CDC 128G classification chrono discussing "violent history," he has not pleaded
8   facts showing that any of the defendants knew about this information when he was removed
9   from DPP and single cell status. In sum, Plaintiff has not pleaded facts showing that any of the
10  defendants knew that there was a risk of harm to Plaintiff if he lacked single cell status, and
11  nevertheless acted or failed to act in deliberate indifference to that known risk. Thus, Plaintiff
12  has failed to state any cognizable claim for a violation of the Eighth Amendment.

13  **D.  Declaratory Judgment**

14  Plaintiff seeks a declaratory judgment that his rights were violated. "A declaratory
15  judgment, like other forms of equitable relief, should be granted only as a matter of judicial
16  discretion, exercised in the public interest." Eccles v. Peoples Bank of Lakewood Village, 333
17  U.S. 426, 431 (1948). "Declaratory relief should be denied when it will neither serve a useful
18  purpose in clarifying and settling the legal relations in issue nor terminate the proceedings and
19  afford relief from the uncertainty and controversy faced by the parties." United States v.
20  Washington, 759 F.2d 1353, 1357 (9th Cir. 1985).

21  In the event that this action reaches trial and the jury returns a verdict in favor of Plaintiff,
22  that verdict will be a finding that Plaintiff's constitutional rights were violated. Accordingly, a
23  declaration that any defendant violated Plaintiff's rights is unnecessary.

24  **E.  Injunctive Relief**

25  Plaintiff seeks several forms of injunctive relief against the individual defendants
26  employed at PVSP, where he is no longer housed. As currently pleaded, because Plaintiff is no
27  longer housed at PVSP, any injunctive relief he seeks against those officials is moot. See
28  Andrews v. Cervantes, 493 F.3d 1047, 1053 n.5 (9th Cir. 2007) (stating prisoner's claims for

1 injunctive relief generally become moot upon transfer) (citing <u>Johnson v. Moore</u>, 948 F.2d 517, 519 (9th Cir. 1991) (per curiam) (holding claims for injunctive relief "relating to [a prison's] policies are moot" when the prisoner has been moved and "he has demonstrated no reasonable expectation of returning to [the prison]")).

### F. Exhaustion of Administrative Remedies

Regarding his claim against Defendant Ogbuehi, Plaintiff checked boxes indicating he did not submit an administrative claim for relief at his institution, and explained that he did not know she was not a physician and should not haves signed CDC 1845 until the middle of 2016. These allegations suggest that Plaintiff may not have fully exhausted his administrative remedies for one or more of his claims.

Pursuant to the Prison Litigation Reform Act (PLRA) of 1996, "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Prisoners are required to exhaust the available administrative remedies prior to filing suit. <u>Jones v. Bock</u>, 549 U.S. 199, 211 (2007); <u>McKinney v. Carey</u>, 311 F.3d 1198, 1199–1201 (9th Cir. 2002). Exhaustion is required regardless of the relief sought by the prisoner and regardless of the relief offered by the process, <u>Booth v. Churner</u>, 532 U.S. 731, 741 (2001), and the exhaustion requirement applies to all suits relating to prison life, <u>Porter v. Nussle</u>, 435 U.S. 516, 532 (2002).

In California, a prison inmate satisfies the administrative exhaustion requirement by following the procedures set forth in sections 3084.1 through 3084.8 of Title 15 of the California Code of Regulations. An inmate "may appeal any policy, decision, action, condition, or omission by the department or its staff that the inmate . . . can demonstrate as having a material adverse effect upon his or her health, safety, or welfare." Cal. Code Regs. tit. 15, § 3084.1(a). The regulations require the prisoner to proceed through all three levels of review. <u>See</u> Cal. Code Regs. tit. 15, § 3084.2(a). A decision at the third level of review, known as the director's level of review, is not appealable and constitutes the third level of administrative review. <u>Id</u>. A cancellation or rejection of an inmate's appeal "does not exhaust administrative remedies." Cal.

11

Code Regs. tit. 15, § 3084.1(b); see also Bennett v. King, 293 F.3d 1096, 1098 (9th Cir. 2002).

To the extent administrative remedies were available to Plaintiff and he failed to exhaust such administrative remedies as described above, his complaint may be subject to dismissal.

## V.

## MOTION FOR COUNSEL

Plaintiff also requests the appointment of counsel, on the grounds that he is unable to afford counsel, his imprisonment limits his ability to litigate, his first language is Korean and he does not have an educational background in the United States, and his cases involves complex medical issues. (ECF No. 3.)

Plaintiff does not have a constitutional right to appointed counsel in this action, Rand v. Rowland, 113 F.3d 1520, 1525 (9th Cir. 1997), and the Court cannot require an attorney to represent Plaintiff pursuant to 28 U.S.C.§ 1915(e)(1), Mallard v. United States District Court for the Southern District of Iowa, 490 U.S. 296, 298, 109 S. Ct. 1814, 1816 (1989). However, in certain exceptional circumstances the Court may request the voluntary assistance of counsel pursuant to section 1915(e)(1). Rand, 113 F.3d at 1525.

Without a reasonable method of securing and compensating counsel, the Court will seek volunteer counsel only in the most serious and exceptional cases. In determining whether "exceptional circumstances exist, a district court must evaluate both the likelihood of success of the merits [and] the ability of the [plaintiff] to articulate his claims pro se in light of the complexity of the legal issues involved." Id. (internal quotation marks and citations omitted).

In the present case, the Court does not find that exceptional circumstances exist which would warrant a request for the voluntary assistance of counsel. Circumstances common to most prisoners, such as non-attorney status and limited law library access, do not establish exceptional circumstances. Further, the record reflects that Plaintiff is adequately able to articulate his claim, and the issues raised are not complex. Finally, at this early stage in the litigation, where Plaintiff has not yet pleaded any cognizable claim, the Court does not find any likelihood of success on the merits. Accordingly, Plaintiff's motion for appointment of counsel is denied, without prejudice.

## VI.

## MOTION FOR SERVICE

Plaintiff has also filed two motions seeking the service of the summons and complaint by the United States Marshal Service. (ECF Nos. 12, 13). Plaintiff is advised that the Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court will direct service of process only after Plaintiff's complaint has been screened and found to state cognizable claims for relief. Once the complaint is screened and found to have stated a cognizable claim against any defendant, a copy of the complaint will be sent to Plaintiff with service documents.

As explained above, the Court does not find that Plaintiff's current complaint states any cognizable claims, and it is being dismissed with leave to amend. Thus, Plaintiff's motions for service are denied, as premature.

## VII.

## CONCLUSION AND ORDER

For the reasons stated, Plaintiff's complaint fails to state a claim upon which relief may be granted. Plaintiff may file an amended complaint to attempt to cure the deficiencies described above within thirty (30) days. Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987). Plaintiff may not change the nature of this suit by adding new, unrelated claims in his amended complaint. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints).

Plaintiff's amended complaint should be brief, Fed. R. Civ. P. 8(a), but must state what each named defendant did that led to the deprivation of Plaintiff's constitutional or other federal rights. Iqbal, 556 U.S. 662, 678. "The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." Leer v. Murphy, 844 F.2d 628, 633 (9th Cir. 1988). Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level. . . ." Twombly, 550 U.S. at 555 (citations omitted).

///

Finally, an amended complaint supersedes the original complaint, <u>Forsyth v. Humana, Inc.</u>, 114 F.3d 1467, 1474 (9th Cir. 1997); <u>King v. Atiyeh</u>, 814 F.2d 565, 567 (9th Cir. 1987), and must be "complete in itself without reference to the prior or superseded pleading," Local Rule 220. "All causes of action alleged in an original complaint which are not alleged in an amended complaint are waived." <u>King</u>, 814 F.2d at 567 (citing to <u>London v. Coopers & Lybrand</u>, 644 F.2d 811, 814 (9th Cir. 1981)); accord <u>Forsyth</u>, 114 F.3d at 1474.

Based on the foregoing, it is HEREBY ORDERED that:

1. Plaintiff's complaint, filed May 24, 2017, is dismissed for failure to state a claim, with leave to amend;

2. Plaintiff's motion for the appointment of counsel (ECF No. 3), is denied, without prejudice;

3. Plaintiff's motions for service of the summons and complaint by the United States Marshal Service (ECF Nos. 12, 13) are denied as premature;

4. The Clerk's Office shall send Plaintiff a civil rights complaint form;

5. Within **thirty (30) days** from the date of service of this order, Plaintiff shall file an amended complaint or a notice of voluntary dismissal; and

6. **<u>If Plaintiff fails to file an amended complaint or notice of voluntary dismissal, this action will be dismissed, with prejudice, for the failure to state a claim, failure to obey a court order, and the failure to prosecute</u>**.

IT IS SO ORDERED.

Dated: **September 20, 2017**

UNITED STATES MAGISTRATE JUDGE